R. T. RACE v. W. H. MALONY; CHARLES H. RACE, *Interpleader, etc.,* v. W. H. MALONY.

1. No CASE OF ACCIDENT OR SURPRISE SUFFICIENT FOR NEW TRIAL, *When.* Certain personal property was attached as the property of the defendant, a non-resident. R. interpleaded, claiming to have purchased the property several months before the attachment. Upon the trial two witnesses testified without objection to statements made by the parties in charge of the property prior to the attachment. No denial was made of these statements upon the trial. The parties, though residents of the county, were not present as witnesses; no effort was made to secure their attendance; no delay asked to secure their presence or testimony. On a motion for a new trial, their affidavits were filed denying the statements imputed to them, and also the affidavits of the interpleader and his counsel, stating that they were surprised at such testimony. No excuse was given for not having them present as witnesses or not securing their testimony. One of the parties was placed in charge of the property by the defendant, and the other, the interpleader, testified he had subsequently sent out to take charge of it, and also that he had consulted with him in reference to testimony for the trial. *Held,* That whether the testimony of the witnesses was competent or not, no case was made out of accident or surprise which reasonable prudence could not have guarded against sufficient to compel the granting of a new trial.

2. ATTACHMENT OF PERSONAL PROPERTY; *Description thereof Unnecessary in Notice of Publication.* In a notice of publication to a non-resident defendant, whose property has been taken in attachment, a description of the property attached is unnecessary when the attachment has been levied upon personal property only.

3. JUDGMENT; *When Not Prematurely Entered.* Judgment by default was entered on the fourth day of a term, the answer having been due nine days before the term commenced. *Held,* That the judgment was not prematurely entered, it not appearing that it was entered before the day upon which the clerk had set the case for hearing upon the trial docket.

## *Error from Elk District Court.*

MALONY commenced an action against *R. T. Race* on two promissory notes, and caused an attachment to be levied on certain personal property. Defendant, being a non-resident, was served by publication. *Charles H. Race,* brother of the defendant, interpleaded, claiming the property attached. On

Race v. Malony.

the trial of this interplea, October Term, 1877, of the district court, judgment was given against the interpleader, *Charles H. Race*, and in the original action, judgment was rendered by default against the defendant, *R. T. Race*, for the amount of the notes, and an order was also entered for the sale of the attached property. To reverse these two judgments, *R. T. Race* and *Charles H. Race* bring the case here for review. The opinion contains a sufficient statement of the facts.

*Parks & O'Connor*, for plaintiff in error, contended that the affidavit for publication was irregular and defective, and that the notice was not in conformity with the statute, citing Dassler's Kas. Stat., p. 66, ch. 14, § 1; also, p. 658, paragraph 3298, and § 74; *Cohen v. Trowbridge*, 5 Kas. 392.

They also contended that the case ought not to have been tried at the October term, 1877, of the court; and further, that the court erred in allowing the declarations of R. T. Race, made in the absence of Charles H. Race, to be introduced to prejudice the title of Charles H. Race, and that the record shows that exceptions were duly made to the introduction thereof.

They also maintained that a new trial should have been granted, especially because of accident and surprise which ordinary prudence could not have guarded against.

*Hill & Broadhead*, for defendant in error:

There seems but little for this court to do. This action was properly brought. The attachment was issued thereafter in due form; no exceptions have been taken to it. The property taken as the property of R. T. Race, *was* the property of R. T. Race, and so appears upon the return of the sheriff, the verdict of the jury, and the judgment of the court. The statute providing for the interpleader is new, and it is possible that the proceedings were slightly informal, but not to that degree that will render them reversible. The defendant C. H. Race has had his day in court, at his own solicitation. The defendant R. T. Race has also had his day in court, and

had full knowledge of all that was done—had his attorney there watching proceedings—and after judgment asked to come in and plead, and was denied. Can he complain of what has been done? We think not.

Evidently R. T. Race hoped that C. H. Race would have been able to sustain his claim to the attached property, thereby preventing judgment in the case. He was not aware that he had a claim that should have been allowed till he saw the judgment staring him in the face; though the claim of R. T. Race is that he has a claim almost equal to the judgment of Malony. This existed, if at all, before the 13th of October, 1877. He knew of the pendency of the action. So, no equitable view of the case will commend to this court that, for the reason assigned by his counsel, the court below erred in not allowing the defendant R. T. Race the privilege to answer in the case out of time.

The motion for a new trial was acted upon, and denied. Why should it have been granted? They claim, among other reasons, "surprise." The witnesses upon whose affidavits the plaintiff here says that Malony and Miller testified falsely, and therefore he is "surprised," were living on the farm when this property was attached, and subject to the process of the court. Why were they not there then? Can a party fail to subpena his witnesses, and claim surprise because a plaintiff makes out his case? We think not.

The opinion of the court was delivered by

BREWER, J.: W. H. Malony commenced an action against R. T. Race in the district court of Elk county on two promissory notes, and caused an attachment to be levied on certain personal property. Defendant, being a non-resident, was served by publication. Chas. H. Race, brother of the defendant, filed his interplea, claiming the property attached. On the trial of this interplea, judgment was rendered against him, and in the original action judgment was rendered by default against the defendant for the amount of the notes, and an order also entered for the sale of the attached prop-

3—21 KAS.

erty.    To reverse these two judgments this proceeding has been instituted, and to the one record two separate petitions in error have been attached.    Waiving any question as to the regularity of this procedure, we have examined the record and are constrained to hold that no error is presented of which either plaintiff in error can avail himself.    With regard to the trial of the interplea, we remark that the record discloses no exceptions to the rulings of the court concerning the admission or rejection of testimony, or in respect to the instructions.    Any error therein is therefore to be taken as waived.    A motion for a new trial was made and overruled, and to this ruling exceptions were taken.    The only grounds open to our examination on this motion are, first, that the verdict was against evidence; and, second, accident and surprise which ordinary prudence could not have guarded against.    An examination of the testimony satisfies us that the verdict of the jury must be sustained, so far as the first ground is concerned, upon the authority of *K. P. Rly. Co. v. Kunkel,* 17 Kas. 145; and *Callison v. Smith,* 20 Kas. 28. There was enough testimony to justify the jury in finding against the claim of the interpleader.    Accident and surprise are claimed by reason of these facts.    Two witnesses testified to certain statements made by the parties in charge of the property subsequently attached.    These parties were residents of the county, and one at least had been consulted by the counsel for the interpleader prior to the trial as to the facts within his knowledge.    Neither was called as a witness on the trial, and so far as appears, no effort was made to secure their presence.    No delay was asked pending the trial for the purpose of securing their attendance to contradict the testimony given of their statements.    On the motion for a new trial their affidavits were read in which they denied making the statements imputed to them by the witnesses, and also the affidavits of the interpleader and his counsel that they were surprised by such testimony.    We think this is not a sufficient showing to justify the court in disturbing the verdict.    The parties placed in charge of the property

were parties likely to know of any change in the title, and the interpleader claiming to have purchased from the defendant several months before the attachment might well have anticipated testimony in that direction. Indeed, one of the parties, the interpleader testified, was sent out by himself, after his purchase, to take charge of the property. And whether the testimony of these statements was strictly competent or not, no exception was taken to its admission. Reasonable prudence could have guarded against any injury from this source.

With regard to the judgment by default, it is urged that the affidavit and notice of publication are both defective. The affidavit states the cause of action to be founded on two promissory notes. This is correct. Though not negotiable, the instruments sued on are promissory notes.

Again say counsel: The publication notice does not describe the property taken, and say that a judgment *in rem* will be rendered against it. It seems that a description of the property is necessary, and a defective description would be fatal.

While a description of the property may be necessary when real estate is seized, it is not necessary when, as in this case, only personal property is attached. The notice informs the defendant that a personal judgment for the amount claimed will be rendered against him, and the property attached sold to satisfy such judgment. This was sufficient.

*Attachment of personal property only, description unnecessary in notice of publication.*

The only remaining question is this, Was the judgment prematurely rendered? The facts are these: The publication notice calls for the answer to be filed by or before the 13th day of October, 1877. The first day of the October term of the Elk county district court is fixed by law for the fourth Monday of October, 1877, which was the 22d day of October of that year. That left only nine days between the answer day and the first day of court. Judgment was entered by default, on October 26th. Was this error? It will be conceded, under the authority of *Gapen v. Stephenson*, 18

Kas. 140, that if an answer had been filed on October 13th, the case would not have stood for trial at the October term. Does the same rule obtain when the case is in default? We think not. Where no answer or demurrer is filed, no *issue*, either of fact or law, arises. (Gen. Stat., p. 679, §§ 262, 263.) A trial is a judicial examination of the *issues* in the case. (Gen. Stat., p. 680, § 265.) Where there are no issues, there can be no trial. Counsel relies upon § 313 of the code, as amended in 1871, (Laws 1871, p. 277,) which reads:

"A trial docket shall be made out by the clerk of court at least twelve days before the first day of each term of the court, and the actions shall be set for particular days, in the order hereinafter stated, and so arranged that the cases set for each day shall be tried as nearly as may be on that day, namely: *First*, Issues of fact to be tried by a jury. *Second*, Issues of fact to be tried by the court. *Third*, Issues of law. *If the defendant fails to answer or demur, the cause, for the purpose of this section, shall be deemed to be at issue upon questions of fact;* but in every such case, the plaintiff may move for and take judgment, as he is entitled to on the defendant's default, *on or after the day on which said action shall be set for trial.*"

Only for the purpose of this section is a case on default deemed to be at issue, and at issue upon questions of fact. But the purpose of this section is merely the arrangement of a trial docket — the distribution of cases to particular days. It does not purport to determine what cases are triable, but only declares in what manner triable cases shall be distributed. And in such distribution, cases on default are to be considered cases at issue on questions of fact, and placed in the first or second class, according to the character of the cause of action alleged in the petition. That this section does not attempt to determine what actions are triable, is made more apparent from § 315, also amended in 1871, which reads:

"Actions shall be triable at the first term of the court after the issues therein by the times fixed for pleading are or shall have been made up ten days before the term. When issues of law are made up either before or during a term of court, but after the period for preparing the trial docket of such term,

the clerk shall place such actions on the trial docket of that term ; and when any demurrer shall be adjudged to be frivolous, the cause shall stand for hearing or trial in like manner as if an issue of fact had been joined in the first instance. But the court may in its discretion fix specially the time when such causes shall stand for trial."

By this, actions are triable although the issues are joined two days after the trial docket is made up. Indeed, as the trial docket is to be made up *at least* twelve days before the term, it may in fact be made up many days before it is settled what cases are triable; and where a frivolous demurrer is filed during the term, the court may order a trial at the same term. Evidently, if after overruling a frivolous demurrer, the court has power to order the trial to be had at the pending term, it ought to have power to dispose of the case when no defense, not even a frivolous one, is interposed ; and turning to section 314, as amended in 1871, we think that gives this power. Such section reads :

"The trial of an issue of fact and the assessment of damages in any case shall be in the order in which they are placed on the trial docket, unless by the consent of the parties or the order of the court they are continued or placed at the heel of the docket, *unless the court in its discretion shall otherwise direct.*"

Now, as to issues of fact, this section is doubtless limited by the succeeding section heretofore quoted, but as to assessment of damages such section furnishes no limitation. And, indeed, in the absence of some statutory limitation we conceive the rule would be, that a judgment upon default might be rendered at any time during any term of court. Court being in session, and the defendant in default, why may not judgment be entered immediately ? There is no reason in the nature of things to the contrary, and no statutory restriction, except that when placed on the trial docket it should be on or after the day on which it is there set for trial.

On the whole case, therefore, we conclude that no error appears on which either plaintiff in error can avail himself, and the judgment must be affirmed.

All the Justices concurring.